

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2003

# USA v. Jones

Precedential or Non-Precedential: Precedential

Docket No. 02-2392

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Jones" (2003). *2003 Decisions.* Paper 408.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/408

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 19, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2392

UNITED STATES OF AMERICA

v.

LESTER JONES,
*Appellant*

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 01-cr-00136)
District Judge: Hon. Donald E. Ziegler

Argued March 11, 2003

Before: SLOVITER, NYGAARD and
ALARCON,* *Circuit Judges*

(Filed: June 19, 2003)

Shelley Stark
Karen Sirianni Gerlach (Argued)
Renee Pietropaolo
Office of Federal Public Defender
Pittsburgh, PA l5222

Attorneys for Appellant

---

* Honorable Arthur L. Alarcon, Senior Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

Mary Beth Buchanan
Bonnie R. Schlueter
Constance M. Bowden
Kelly R. Labby (Argued)
Office of United States Attorney
Pittsburgh, PA l5219

   Attorneys for Appellee

---

## OPINION OF THE COURT

---

SLOVITER, *Circuit Judge.*

In this appeal by Lester Jones challenging the enhancement of his sentence pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), we consider a question of first impression for this court — whether a prior nonjury juvenile adjudication can count as a prior conviction for purposes of the exception to *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

## I.

## BACKGROUND

Jones was indicted in the Western District of Pennsylvania with one count of being a previous felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and (e). Initially, he pleaded not guilty but thereafter changed his plea to guilty. During the change of plea hearing, the Government summarized its evidence against Jones. Three witnesses claimed that on April 10, 2000, Jones went to an apartment in Pittsburgh, Pennsylvania where he displayed two guns, one of which he discharged twice. Thereafter, Jones threatened the occupants and fled the apartment with $10,000 in cash and some clothing. When the police caught Jones, they recovered the stolen clothing, $10,000 in cash, and two guns, a Taurus and a Smith & Wesson. Experts matched

two casings and a bullet found in the apartment to the Taurus gun.[1]

A defendant convicted of being a felon in possession of a firearm is subject to a sentence of a maximum of 10 years imprisonment under 18 U.S.C. § 924(a)(2). However, the ACCA mandates a minimum sentence of 15 years imprisonment for anyone convicted of being a felon in possession in violation of 18 U.S.C. § 922(g)(1) who is found to have three previous convictions for a violent felony or serious drug offense. 18 U.S.C. § 924(e). The District Court noted that Jones had two adult state felony drug convictions and one prior juvenile adjudication for a violent crime, thereby constituting the necessary three prior convictions for application of the ACCA. Thereafter, the District Court ordered Jones to pay a special assessment in the sum of $100 and sentenced him to a 15 year term of imprisonment followed by a 4 year term of supervised release. This appeal followed.

Before us, Jones argues that the ACCA cannot apply to him. He does not dispute that his adult drug convictions qualify as prior convictions for purposes of the ACCA. Instead, Jones raises both statutory and constitutional challenges to the use of his prior juvenile adjudication for enhancement purposes. First, Jones argues that his juvenile adjudication does not constitute a "violent felony" under the ACCA when applying the "categorical approach" as enunciated in our recent decision in *United States v. Richardson*, 313 F.3d 121 (3d Cir. 2002). Next, Jones contends that because he was not afforded the right to a jury trial during his juvenile adjudication, that adjudication cannot qualify for the so-called "prior conviction exception" articulated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Although neither the Supreme Court nor this court has addressed this issue, two other courts of appeals have rendered differing opinions on this precise question, thereby creating a circuit split. Finally, Jones alleges that his prior juvenile adjudication cannot be used for enhancement purposes because the certified

---

1. Jones admitted to possessing the Taurus gun but denied robbing anyone.

records from his juvenile adjudication do not demonstrate that he was afforded the right to counsel or waived such right.

Jones asks us to vacate his sentence and remand for resentencing with instructions that he be sentenced without the application of the ACCA.

## II.

## DISCUSSION

### A. *Jurisdiction and Standard of Review*

We have jurisdiction to hear this appeal pursuant to 18 U.S.C. §§ 1291 and 3742(a). This appeal presents purely legal questions, over which we exercise plenary review. *See United States v. Preston*, 910 F.2d 81, 84 (3d Cir. 1990).

### B. *Jones' Statutory Claim*

We first consider Jones' allegation that the statutory elements underlying his prior juvenile adjudication do not constitute a "violent felony" under the ACCA because we need not address his constitutional claims if we are persuaded by this statutory claim. In relevant part, the ACCA reads:

> (1)  In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both . . . such person shall be fined not more than $25,000 and imprisoned not less than fifteen years . . .
>
> (2)  As used in this subsection —
>
> . . .
>
> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that —

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another;

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involved conduct that presents a serious potential risk of physical injury to another; and

(C) the term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

18 U.S.C. § 924(e).

To decide Jones' statutory claim, we must examine the offenses for which he was adjudicated delinquent as a juvenile by the Court of Common Pleas of Allegheny County. These were simple assault, aggravated assault, and a violation of Pennsylvania's Uniform Firearms Act, offenses we explore more fully below.

Relying on our recent decision in *United States v. Richardson*, 313 F.3d 121 (3d Cir. 2002), Jones claims that his juvenile adjudication fails to constitute a "violent felony" as described under the ACCA. In *Richardson*, we held that when a juvenile adjudication is invoked to enhance a sentence under the ACCA, the sentencing court must use the same "categorical approach" as prescribed by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), for prior adult convictions. 313 F.3d at 122. The categorical approach requires the court to look only to the fact of conviction and the statutory definition of the prior offense to determine whether the defendant committed an offense which may be used for enhancement purposes. *Id.* at 125. The court is not to consider the actual conduct in which the juvenile engaged and make a factual determination as to whether the juvenile committed the offense. *Id.*

Explaining the ease with which the sentencing court can apply the categorical approach to determine whether the offense statutorily qualifies as a "violent felony" under the ACCA, we noted that "all it would have had to do would be to review the Pennsylvania criminal statutes underlying the

juvenile adjudication" and see whether those statutes have as a necessary element "the use or carrying of a firearm, knife, or destructive device" required for a juvenile adjudication to count as a predicate offense under the ACCA. *Id.* at 127. In *Richardson*, the "necessary element" was not present in the statutes underlying the defendant's juvenile adjudication and thus, we vacated the sentence and remanded for resentencing. *Id.* at 127-28.

Jones' sentencing preceded our decision in *Richardson* and the District Court did not apply the categorical approach. Before us, the parties disagree as to how the categorical approach should be applied in Jones' case. Jones argues that to constitute a "violent felony" under the ACCA, the court must consider each statute underlying Jones' juvenile adjudication separately and at least one of the statutes must contain *both* requirements of the ACCA: "the use or carrying of a firearm, knife, or destructive device" *and* the use or threatened use of force. The Government rejects Jones' contention that the sentencing court is to parse out each charge underlying an act of juvenile delinquency and view it in isolation to determine whether one charge — alone — includes elements of both carrying a firearm and the use, attempted use, or threatened use of physical force. Instead, it argues that under the categorical approach, the sentencing court should view the underlying charges collectively to determine whether the ACCA's statutory elements are met. In defining "violent felony," the ACCA itself fails to definitively indicate whether the statutes underlying a juvenile adjudication should be viewed individually or in the aggregate. *See* 18 U.S.C. § 924(e)(2)(B).

Under either party's interpretation, the categorical approach directs an examination of the plain language of the statutes underlying Jones' juvenile adjudication, including simple assault,[2] aggravated

---

2. Pennsylvania's statute for simple assault, 18 Pa. Cons. Stat. Ann. § 2701, provides, in relevant part:

(a)   Offense defined. — A person is guilty of assault if he:

(1)   attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

assault,[3] and a violation of Pennsylvania's Uniform

---

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

3. Pennsylvania's statute for aggravated assault, 18 Pa. Cons. Stat. Ann. § 2702, provides in relevant part:

(a) Offense defined. — A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

(3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty;

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member or other employee, including a student employee, of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school; or

(6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury.

Firearms Act.[4] Jones argues that although the statutory elements of these three offenses require either "the use or carrying of a firearm, knife, or destructive device," or the use or threatened use of force, none of them individually requires both. It follows, according to Jones, that his juvenile adjudication does not constitute a "violent felony" under 18 U.S.C. § 924(e)(2).

In an effort to buttress his case, during oral argument counsel for Jones urged us to consider not only *Richardson* but also *United States v. Galo*, 239 F.3d 572 (3d Cir. 2001). In *Galo*, a case dealing with sentencing enhancements under 18 U.S.C. § 2251(d) and not the ACCA, a divided panel of this court held that the district court erred in enhancing defendant's sentence because defendant had not previously been convicted of violating a law relating to the sexual exploitation of children as required by the relevant statute for enhancement purposes. *Id.* at 583-84. Holding that the district court should not have considered defendant's prior conduct, the court concluded that under the categorical approach, the sentencing court "should have focused only on the statutory definitions of those prior convictions." *Id.* at 582. A reading of the *Galo* court's conclusion, indeed a reading of the entire opinion, provides no support for Jones' contention that the categorical approach mandates a piecemeal statutory examination. *Galo* merely states that the categorical approach precludes

---

4. Pennsylvania's Uniform Firearms Act, 18 Pa. Cons. Stat. Ann. § 6106, provides in relevant part:

(a) Offense defined. —

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

the sentencing court from engaging in a fact-finding expedition and instead requires an examination of the statutory elements underlying the defendant's prior conviction. *Id.* at 581-82. Thus, Jones' reliance on *Galo* is misplaced.

As for *Richardson*, it too fails to support Jones' narrow vision of the categorical approach. Focusing on whether to use the categorical approach over and above a fact-finding approach, the *Richardson* court said little about how to apply the categorical approach, thus admittedly leaving us with little guidance as to the issue before us. This is not to say that we are altogether without direction. The *Richardson* court did state that a review of the statutes underlying the defendant's juvenile adjudication would make clear that "*none of the offenses* . . . had as a necessary element 'the use or carrying of a firearm, knife, or destructive device.'" *Richardson*, 313 F.3d at 127 (emphasis added). This statement, in our view, provides support for the Government's argument that the statutes underlying Jones' juvenile adjudication should be viewed collectively to determine whether they statutorily constitute a "violent felony" for purposes of the ACCA.

Considering *Richardson* in tandem with a commonsense reading of the ACCA, we conclude that when applying the categorical approach to a juvenile adjudication for purposes of sentencing enhancement, a sentencing court may consider all the statutory elements underlying the juvenile adjudication collectively. After all, "violent felony" is defined as "any act of juvenile delinquency involving the use or carrying of a firearm" and has as an element the use or attempted use of force. 18 U.S.C. § 924(e)(2)(B). Jones was adjudicated delinquent for various offenses, and we reject his argument that the categorical approach requires a piecemeal examination of each offense.

Viewing the statutes underlying Jones' prior juvenile adjudication collectively, it is apparent that together they require the carrying of a firearm and the use, attempted use, or threatened use of force. Jones himself acknowledges that simple assault and aggravated assault both require the use or threatened use of force while the Uniform Firearms Act requires the use of a firearm. Jones was adjudicated

delinquent based on these three statutes, which together constitute a "violent felony" under the ACCA. As such, we conclude that even though the District Court did not apply the categorical approach in the current case, its enhancement of Jones' sentence under the ACCA did not offend the categorical approach. Rejecting Jones' statutory claim, we turn now to his constitutional challenges.

## C. *Apprendi v. New Jersey*

### 1. *The Circuit Split*

Jones' next claim presents us with one of the many issues deriving from the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that a fact that "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court, however, provided the following well-noted exception: a fact of a prior conviction can be used to increase the penalty for a crime beyond the prescribed statutory maximum even if it is not submitted to the jury and proved beyond a reasonable doubt. *Id.* The question before us, then, is whether a prior juvenile adjudication, albeit nonjury, qualifies as a "prior conviction" for purposes of the *Apprendi* exception. Although this court has never answered this specific question, we consider the views of the two federal courts of appeals that previously have addressed the issue.

In *United States v. Tighe*, a majority of a panel for the United States Court of Appeals for the Ninth Circuit framed the issue before it as follows: "do prior juvenile adjudications, which do not afford the right to a jury trial, fall within the 'prior conviction' exception to *Apprendi*'s general rule that a fact used to increase a defendant's maximum penalty must be submitted to a jury and proved beyond a reasonable doubt?" 266 F.3d 1187, 1193 (9th Cir. 2001). The majority answered the question in the negative, holding that the prior conviction exception to *Apprendi*'s general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. *Id.* at 1194. The court acknowledged that at "first blush" it

would appear that a juvenile adjudication would fit within *Apprendi*'s exception, but it decided that appearance dissipates when considering the constitutional differences between adult and juvenile convictions, such as the lack of a right to jury trials in most juvenile cases. *Id.* at 1192-93.

The court examined the scope of the term "conviction" as used by the Supreme Court in *Apprendi* and the cases leading up to *Apprendi*. *Id.* at 1193. Specifically, it focused on two passages from Supreme Court decisions explaining the distinctiveness of prior convictions. The first passage came from *Jones v. United States*, 526 U.S. 227 (1999), a precursor to *Apprendi*, and reads as follows:

> One basis for that constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense . . . *a prior conviction itself must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees.*

*Tighe*, 266 F.3d at 1193-94 (quoting *Jones*, 526 U.S. at 249).

The *Tighe* court next quoted the following passage from *Apprendi* itself:

> There is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.

*Id.* at 1194 (quoting *Apprendi*, 530 U.S. at 496).

Based on these two passages, the *Tighe* court decided that juvenile adjudications that do not afford the right to a jury trial and require a beyond-a-reasonable-doubt burden of proof do not fit within *Apprendi*'s exception for prior convictions. *Id.* at 1194.

The dissenting panel member accused the *Tighe* majority of taking language from *Jones* and "mak[ing] the quantum

leap" to hold that in order for a prior conviction to support a sentencing enhancement, it must have been subject to fair notice, reasonable doubt, and the right to a jury trial. *Id.* at 1200 (Brunetti, J., dissenting). According to the dissenter, simply because one part of this "fundamental triumvirate of procedural protections" — the right to a jury trial — is absent, the majority removes juvenile adjudications from the ACCA's grasp. *Id.* Furthermore, according to the dissenting judge, the excerpted language from *Jones* simply denotes Congress' constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant received all process that was due when convicted — for adults that includes the right to a jury trial; for juveniles, it does not. *Id.*

Last year, a unanimous panel for the Court of Appeals for the Eighth Circuit flatly rejected *Tighe* in holding that a prior nonjury juvenile adjudication qualifies as an exception under *Apprendi. See United States v. Smalley*, 294 F.3d 1030 (8th Cir. 2002), *cert. denied*, 123 S. Ct. 870 (2003). Smalley, like the defendant in the case before us and that in *Tighe*, was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). After Smalley pleaded guilty, the district court applied the ACCA and sentenced him to 15 years incarceration. Smalley appealed, alleging that the district court erred in enhancing his sentence based on prior juvenile adjudications.

In holding that prior juvenile adjudications can "rightly" be characterized as "prior convictions" for *Apprendi* purposes, the *Smalley* court rejected the reasoning employed in *Tighe. Id.* at 1032-33. In so doing, the court refused to read *Apprendi* as creating a bright line rule whereby proof beyond a reasonable doubt, fair notice, and a right to a jury trial are all necessary procedural safeguards that must be present before qualifying for the *Apprendi* exemption. *Id.* at 1032.

Instead of relying on the "narrow parsing of words," the *Smalley* court examined the reality of actual juvenile adjudications to determine whether they are sufficiently reliable so as to not offend constitutional rights if used to qualify for the *Apprendi* exception. *Id.* at 1033. The court

noted that juvenile defendants receive process that has been held to satisfy constitutional standards, including the right to notice, right to counsel, right to confront and cross-examine witnesses, and the privilege against self-incrimination. *Id.* Furthermore, to convict a juvenile, a judge must find guilt beyond a reasonable doubt. *Id.* The court found these procedural safeguards to be sufficient for purposes of the *Apprendi* exception. *Id.* In short, the *Smalley* court concluded that the absence of the right to a jury trial does not automatically disqualify juvenile adjudications for purposes of the *Apprendi* exception.

### 2. *The Current Appeal*

Lester Jones urges us to adopt the reasoning and holding from the Ninth Circuit's majority opinion in *Tighe*. According to Jones, the *Tighe* court relied on the "clear mandate of Supreme Court case law." Appellant's Br. at 27. Undoubtedly, this is a grave overstatement, if not a misstatement, of the law. Jones concedes that the Supreme Court cases relied on by the *Tighe* court never addressed the precise issue presented before us. Furthermore, Jones fails to direct us to any Supreme Court language articulating this alleged mandate. In any event, it is clear that to date, the Supreme Court has not held that prior nonjury juvenile adjudications cannot count as prior convictions for purposes of *Apprendi*'s exception.

The Government, on the other hand, urges us to adopt the reasoning of the Eighth Circuit in *Smalley*. It notes that in *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971), the Supreme Court held that due process does not require providing juveniles with the right to a jury trial. It follows, according to the Government, that when a juvenile is adjudicated guilty beyond a reasonable doubt in a bench trial that affords all the due process protections that are required, the adjudication should be counted as a conviction for purposes of subsequent sentencing under the ACCA. We agree.

Like the *Smalley* court, we find nothing in *Apprendi* or *Jones*, two cases relied upon by the *Tighe* court and Lester Jones on this appeal, that requires us to hold that prior nonjury juvenile adjudications that afforded all required

due process safeguards cannot be used to enhance a sentence under the ACCA.

It follows that if Lester Jones was afforded all the procedural safeguards that he is constitutionally due, the District Court properly enhanced his sentence pursuant to the ACCA. A prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for *Apprendi* purposes. We proceed to consider Lester Jones' claim that his particular juvenile adjudication was procedurally deficient.

## D.  *Jones' Sixth Amendment Claim*

The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to counsel in both state and federal courts. *See Gideon v. Wainwright*, 372 U.S. 335, 339-40 (1963). Jones claims that the District Court violated his Sixth Amendment right to counsel by enhancing his sentence based upon his prior juvenile adjudication because records for that adjudication do not indicate that he was represented by counsel and do not show that he waived his right. He contends that we must therefore vacate his sentence and remand for resentencing with instructions to the District Court to sentence him without applying the ACCA.

As a preliminary matter, we note that Jones does not allege that he was not represented by counsel during his juvenile adjudication. Instead, he argues that where, as here, the certified records from a prior conviction do not show that the defendant was represented by counsel, there is a presumption that the defendant was denied his right to counsel. For this proposition, Jones relies on the Supreme Court's decision in *Burgett v. Texas*, 389 U.S. 109 (1967).

In *Burgett*, the defendant was charged in a five-count indictment. The first count charged assault and the remaining counts alleged prior felonies pursuant to Texas' recidivist statutes that would have subjected the defendant to an enhanced sentence upon conviction of count one. The State offered two differing certified copies of one of the prior convictions. The first version of the prior conviction read: "Came the Assistant Attorney-General for the State and the

Defendant in proper person and *without Counsel.*" *Id.* at 112 (emphasis added). After the defendant objected to the introduction of the prior conviction on the ground that he was not represented by counsel, the State offered another certified copy of the same prior conviction which again stated that defendant had appeared "in proper person" but which did not include the additional words "without counsel." *Id.* The State failed to offer an explanation for the differing versions. According to the Supreme Court, the certified records, on their face, created a presumption that the defendant in that case was denied his right to counsel and thus, his conviction was void. *Id.* at 114. Furthermore, the Court noted that the presumption of waiver of counsel could not be deemed from a silent record. *Id.* at 114-15.

This case is different. Here, the Government claims that Jones was afforded all required procedural protections during his juvenile adjudication. It argues that Jones has done no more than state that his records failed to indicate whether he had counsel, was denied counsel, or waived his right to counsel. According to the Government, Jones has the burden of establishing that his prior conviction suffers a constitutional infirmity. Otherwise, the presumption of regularity attaches to the conviction. We agree with the Government that *Parke v. Raley*, 506 U.S. 20 (1992), forecloses Jones' argument that his silent record as to counsel automatically shifts the burden to the Government to prove that he was afforded counsel or waived that right.

Twenty-five years after its decision in *Burgett*, the Supreme Court took pains to narrow the scope of that decision. In *Parke*, a state prisoner, after exhausting his state remedies, petitioned for a writ of habeas corpus in a federal district court seeking a vacatur of his state court sentence that had been enhanced due to two prior convictions based on guilty pleas. The prisoner claimed that because his records contained no transcripts of the prior plea proceedings, it could not be determined whether his plea was entered knowingly and intelligently. The *Parke* Court addressed the defendant's argument that *Burgett* stood for the proposition that a previous conviction used to enhance punishment is presumptively void if waiver of a claimed constitutional right does not appear on the face of

the record. Placing *Burgett* in its proper historical context, the Court opted not to "read the decision so broadly," and noted that in *Burgett*, the defendant's conviction was entered before the Court had recognized state criminal defendants' federal constitutional right to counsel in the watershed decision of *Gideon v. Wainwright*, 372 U.S. 335 (1965). *Parke*, 506 U.S. at 31. Accordingly, one could reasonably presume that the defendant in *Burgett* did not waive a right he had not yet been held to possess. *Id.* The Court held that the same presumption did not apply to the defendant in *Parke*, who sought relief based on an unavailable record on collateral review. *Id.* The Court further noted that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign the burden of proof to the defendant. *Id.*

Like the Court in *Parke*, we see no reason why it would be unreasonable to attach the presumption of regularity to a record silent as to the presence of counsel, as the events occurred for Jones several decades after the Supreme Court recognized the constitutional right to counsel for all criminal defendants. Furthermore, it is of no import for our purposes that *Parke* was a habeas case rather than a sentencing case. *See United States v. Gray*, 177 F.3d 86, 90-91 (1st Cir. 1999) (finding that even in a sentencing case, *Parke* foreclosed argument that record silent as to counsel shifts burden to Government to prove right to counsel was either afforded or waived). As the presumption of regularity attached to Jones' juvenile adjudication, we reject his argument that the Government must prove that he was either afforded his right to counsel or waived that right.

On a final note, we have no reason to doubt that Jones was provided other procedural safeguards during his juvenile adjudication. Although Jones makes no additional challenges to his juvenile adjudication, we nonetheless note that the certified record from that adjudication provides us with ample reason to believe it was procedurally sound. The record reads: "[A]fter a full hearing, the Court finds by *proof beyond a reasonable doubt* that [Lester Jones] has

committed the . . . delinquent acts" for which he was adjudicated delinquent as a juvenile. Supp. App. at 1 (emphasis added). Thus, it is beyond dispute that the court in Jones' juvenile adjudication employed the proper standard — that of reasonable doubt — before adjudicating him delinquent. At all events, there is nothing in Jones' record that leads us to believe his juvenile adjudication did not provide him with adequate procedural safeguards.

## III.

## CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment of sentence.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*