[Nos. H025406, H025428. Sixth Dist. Nov. 25, 2003.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent,
DALON TARIQ ANDRADES, Real Party in Interest.

[No. H025569. Sixth Dist. Nov. 25, 2003.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent,
PATRICK FISHER, Real Party in Interest.

[No. H025513. Sixth Dist. Nov. 25, 2003.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent,
CHARLES EDWARD BEAVERS, Real Party in Interest.

## COUNSEL

George W. Kennedy, District Attorney, Joseph V. Thibodeaux and Neal J. Kimball, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Jose R. Villarreal, Public Defender, Barbara B. Fargo, Seth A Flagsberg and Dennis J. Dawson, Deputy Public Defenders, for Real Parties in Interest.

## OPINION

**BAMATTRE-MANOUKIAN, J.**—Each of these cases presents two issues. The first issue is whether a prior juvenile adjudication of robbery (Pen. Code, § 211)[1] constitutes a strike offense within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12) in cases where the prior adjudication occurred before robbery was added to the list of offenses in Welfare and Institutions Code section 707, subdivision (b) by the passage of Proposition 21 on March 7, 2000, but the current offense was committed after that date. The second issue is whether *any* prior juvenile adjudication may constitutionally be used as a strike in light of the fact that there is no right to a jury trial in juvenile proceedings.

In each case, the trial court determined that the defendants' prior juvenile adjudications for robbery did not qualify as strikes because robbery was not included in the list of offenses in Welfare and Institutions Code section 707, subdivision (b) at the time of the defendant's prior juvenile adjudication. The trial courts therefore dismissed the strike allegations on that basis and did not reach the second issue, whether the use of a prior juvenile adjudication as a strike is constitutional.

---

[1] Unspecified section references are to the Penal Code.

We conclude that a prior juvenile adjudication of robbery *does* constitute a strike in cases where the current offense was committed after the passage of Proposition 21. We further conclude that a prior juvenile adjudication may constitutionally be used as a strike even though there is no right to a jury trial in juvenile proceedings. We will therefore grant the People's petitions for writs of mandate, with the exception of case No. H025406 (*Andrades*), which we will deny as moot in light of our issuance of a peremptory writ of mandate in case No. H025428 (*Andrades*).

## I. BACKGROUND

The facts underlying the charged and prior offenses of each case are not relevant to the issues presented by the instant writ petitions. We briefly summarize the procedural history of each case.

### A. Case Nos. H025406 and H025428 (Andrades)

Defendant and real party in interest Dalon Tariq Andrades was charged, by indictment, with attempted murder (§§ 664, subd. (a), 187), assault with a deadly weapon (§ 245, subd. (a)(1)) and possession for sale of cocaine base (Health & Saf. Code, § 11351.5). These offenses were alleged to have occurred on November 18, 2000, October 20, 2000, and December 11, 2000, respectively. The indictment alleged that Andrades had suffered a prior juvenile adjudication for robbery (§ 211), which qualified as a "strike."[2]

On June 4, 2002, Andrades pled guilty to possession for sale of cocaine base. On November 1, 2002, the trial court dismissed the allegation that Andrades had suffered a prior strike, finding that his prior juvenile adjudication of robbery was not a "strike" under section 667, subdivision (d)(3), because robbery was not listed in Welfare and Institutions Code section 707, subdivision (b) at the time of the prior juvenile adjudication.

On December 17, 2002, the People filed a notice of appeal, and on January 6, 2003, the People filed their first petition for writ of mandate (case No. H025406). At sentencing on January 7, 2003, the trial court placed Andrades on probation for two years with one year in county jail. The following day, January 8, 2003, the People filed a second petition for writ of mandate (case No. H025428).

### B. Case No. H025513 (Beavers)

Defendant and real party in interest Charles Edward Beavers was charged, by information, with transportation or sale of cocaine base (Health & Saf.

---

[2] The juvenile court records submitted with the People's petition for writ of mandate indicate that during the prior juvenile proceedings, Andrades admitted committing robbery.

Code, § 11352, subd. (a)). That offense was alleged to have occurred on or about May 19, 2002. The information alleged that Beavers's prior juvenile adjudication for robbery qualified as a "strike."

On September 25, 2002, Beavers pled guilty to transportation or sale of cocaine base. On the same date, the trial court dismissed the allegation that Beavers had suffered a prior strike, finding that his prior juvenile adjudication of robbery was not a "strike" under section 667, subdivision (d)(3), because robbery was not listed in Welfare and Institutions Code section 707, subdivision (b) at the time of the prior juvenile adjudication.[3]

At sentencing on December 6, 2002, the trial court denied the People's request for reconsideration of its ruling and imposed a three-year prison term. On January 15, 2003, the People filed a notice of appeal, and on January 27, 2003, the People filed a petition for writ of mandate.

### C.  *Case No. H025569 (Fisher)*

Defendant and Real Party in Interest Patrick Fisher was charged, by information, with assault with a deadly weapon (§ 245, subd. (a)(1)), attempting to dissuade a witness (§ 136.1, subd. (b)(1)), criminal threats (§ 422), exhibiting a deadly weapon (§ 417, subd. (a)(1)), felony vandalism (§ 594, subds. (a) & (b)(1)), and driving under the influence of alcohol. These offenses were alleged to have occurred on or about May 13 and 14, 2002. The information alleged that Fisher's prior juvenile adjudication for robbery qualified as a "strike."

On November 14, 2002, Fisher pled guilty to assault with a deadly weapon, exhibiting a deadly weapon, and felony vandalism. On December 18, 2002, the trial court found true the allegation that Fisher "did suffer a prior conviction within the provisions of the strike law," but dismissed the allegation "as a matter of law," finding that Fisher's prior juvenile adjudication for robbery "does not legally qualify under the three-strikes law."

A sentencing hearing was set for January 21, 2003, but the materials submitted in support of the petition for writ of mandate do not indicate what happened at that hearing. The People filed a notice of appeal on January 23, 2003, and on February 10, 2003, the People filed a petition for writ of mandate.

---

[3] The juvenile court records submitted with the People's "Reply to the Return to the Order to Show Cause" indicate that during the prior juvenile proceedings, the juvenile court made a specific finding that this was "a Section 707(b) Welfare and Institutions Code commitment."

### D. *Orders to Show Cause and Stays*

By an order issued on April 7, 2003, we agreed to consider the four writ petitions together for purposes of oral argument and decision and issued orders to show cause in each case. On that same date, we issued stays in the related appeals: *People v. Andrades*, H025437; *People v. Beavers*, H025488; and *People v. Fisher*, H025563.

## II. DISCUSSION

### A. *Availability of Writ Relief*

The People contend that writ relief is available because section 1238 may not provide them with an appellate remedy. The People cite *People v. Samples* (2002) 104 Cal.App.4th 76 [128 Cal.Rptr.2d 1], where the appellate court held that the People have no right to appeal from an order finding a prior conviction allegation not true. Review was granted in *Samples* on February 25, 2003 (S112201). Defendants do not contend that writ relief is unavailable.

### B. *Juvenile Adjudications for Robbery*

#### 1. Welfare and Institutions Code section 707, subdivision (b)

■ In general, a minor who commits a criminal offense is presumed fit for treatment under the juvenile court law. (Welf. & Inst. Code, § 707, subd. (a); see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548 [117 Cal.Rptr.2d 168, 41 P.3d 3].) However, upon the motion of the prosecutor and after an investigation and report by a probation officer, the juvenile court may find that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court. (Welf. & Inst. Code, § 707, subd. (a)(1).)

■ The commission of an offense listed in Welfare and Institutions Code section 707, subdivision (b) by a juvenile aged 16 or over raises a presumption of unfitness for treatment under the juvenile court law. (See Welf. & Inst. Code, § 707, subd. (c).) The presumption of unfitness may be rebutted upon the juvenile court's "evaluation of each of the following criteria: [¶] (1) The degree of criminal sophistication exhibited by the minor. [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (3) The minor's previous delinquent history. [¶] (4) Success of previous

attempts by the juvenile court to rehabilitate the minor. [¶] (5) The circumstances and gravity of the offenses alleged in the petition to have been committed by the minor." (Welf. & Inst. Code, § 707, subd. (c).)

## 2. Proposition 21

At the March 7, 2000, Primary Election, California voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, which became effective on March 8, 2000. Proposition 21 effected numerous changes in laws relating to criminal street gangs and the procedures relating to juvenile offenders. Proposition 21 also enacted changes to the list of "violent" felonies in section 667.5, subdivision (c), the list of "serious" felonies in section 1192.7, subdivision (c), and the list of offenses in Welfare and Institutions Code section 707, subdivision (b).

As relevant to the instant case, Proposition 21 added the crime of "Robbery" to the list of offenses in Welfare and Institutions Code section 707, subdivision (b), replacing the formerly listed offense of "Robbery while armed with a dangerous or deadly weapon."

## 3. Three Strikes Law

California's Three Strikes Law was enacted in 1994. (§ 667, subds. (b)–(i) [urgency legislation eff. Mar. 7, 1994]; see also § 1170.12 [Prop. 184, voter initiative approved Nov. 8, 1994].) The Three Strikes law specifies four requirements for using a prior juvenile adjudication as a strike. Section 667, subdivision (d)(3) provides: "A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if:

"(A) The juvenile was 16 years of age or older at the time he or she committed the prior offense.

"(B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) [any one of the serious or violent felonies listed in section 667.5, subdivision (c) and section 1192.7, subdivision (c)] or [paragraph] (2) [a conviction in another jurisdiction for an offense that includes all the elements of one of the serious or violent felonies listed in section 667.5, subdivision (c) and section 1192.7, subdivision (c)].

"(C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law.

"(D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the

person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code."

For convenience, we will sometimes refer to the four paragraphs of section 667, subdivision (d)(3) simply as paragraphs (A), (B), (C), and (D).

## 4. Analysis

The issue in each of the instant cases is whether the requirement of section 667, subdivision (d)(3)(D) was met. Each defendant contends that he was *not* "adjudged a ward of the juvenile court" because he committed "an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (§ 667, subd. (d)(3)(D).)

In each of the instant cases, the strike allegation is a prior juvenile adjudication of robbery. At the time of each prior juvenile adjudication, robbery was not listed in Welfare and Institutions Code section 707, subdivision (b). "Robbery while armed with a dangerous or deadly weapon" *was* one of the listed offenses (see former Welf. & Inst. Code, § 707, subd. (b)(3), Stats. 1976, ch. 1071, § 28.5, p. 4826), but the parties agree that there is no evidence to show that any of the robberies were committed while the defendants were armed with a dangerous or deadly weapon.[4]

With the enactment of Proposition 21 on March 7, 2000, "Robbery" was added to the list of offenses in Welfare and Institutions Code section 707, subdivision (b), replacing "Robbery while armed with a dangerous or deadly weapon." (Welf. & Inst. Code, former § 707, subd. (b)(3).) Thus, at the time each of the defendants committed his current offense or offenses, robbery *was* "an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (§ 667, subd. (d)(3)(D).)

In each of the cases before us, the trial courts found that paragraph (D) requires that a juvenile have been "adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code" (§ 667, subd. (d)(3)(D)) by virtue of commission of an offense that was listed in Welfare and Institutions Code section 707, subdivision (b) at the time of that previous juvenile adjudication.

The People assert that paragraph (D)'s reference to Welfare and Institutions Code section 707, subdivision (b) is to the post-Proposition 21 version of that

---

[4] As noted above, the juvenile court records submitted along with the People's reply in Beavers's case indicate that the juvenile court found that "this is a Section 707(b) Welfare and Institutions Code commitment."

statute. In other words, the question whether a juvenile committed an offense listed in Welfare and Institutions Code section 707, subdivision (b) depends on whether or not the prior offense was listed at the time of the current offense.

The People point out that, as part of Proposition 21, the electorate enacted section 667.1, which provides: "Notwithstanding subdivision (h) of Section 667, for all offenses committed on or after the effective date of this act, all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act." (See also § 1170.125.)[5]

In *People v. Bowden* (2002) 102 Cal.App.4th 387 [125 Cal.Rptr.2d 513] (*Bowden*), the court agreed with the People's argument. The *Bowden* court concluded that a prior juvenile adjudication for robbery suffered prior to the passage of Proposition 21 qualifies as a strike if the *current* offense was committed *after* the passage of Proposition 21. That court explained: "Because the March 7, 2000 initiative measure both (1) changed the cutoff date in the Three Strikes law and (2) changed Welfare and Institutions Code section 707, subdivision (b) to include simple robbery, and the present crimes were committed after the March 7, 2000 amendments, the prosecution's proof that [the defendant] suffered a prior juvenile adjudication of simple robbery *is* sufficient to prove the strike." (*Bowden, supra,* 102 Cal.App.4th at p. 391.)

The *Bowden* court cited *People v. James* (2001) 91 Cal.App.4th 1147 [111 Cal.Rptr.2d 292] as authority for its conclusion. In *James,* the defendant had prior convictions of assault with a firearm (§ 245, subd. (a)(2)) and shooting at an inhabited dwelling house or motor vehicle (§ 246). The prior offenses had occurred in 1993 and the convictions were obtained in 1994. Prior to the passage of Proposition 21, those offenses constituted serious felonies under section 1192.7, subdivision (c) only if the defendant had personally used a firearm or had personally inflicted great bodily injury. Proposition 21 added both offenses to section 1192.7, subdivision (c). The *James* court held that because the defendant's current offense was committed after the passage of Proposition 21, the prior convictions qualified as strikes. The court explained: "Penal Code sections 667.1 and 1170.125 require that, if the current offense was committed on or after March 8, 2000, a determination whether a prior conviction alleged as a serious felony is a prior strike must be based on whether the prior offense resulting in that conviction was a serious felony

---

[5] Section 667, subdivision (h) provides: "(h) All references to existing statutes in subdivisions (c) to (g), inclusive, are to statutes as they existed on June 30, 1993." (See also Prop. 184, § 2.)

within the meaning of the three strikes law on March 8, 2000 [the effective date of Proposition 21]." (*James, supra,* 91 Cal.App.4th at p. 1151.)

Defendants criticize *Bowden's* reliance on *James,* pointing out that *James* involved an adult prior conviction rather than a juvenile prior conviction, and that *James* did not involve interpretation of paragraph (D). Defendants also contend *Bowden* is inconsistent with *People v. Garcia* (1999) 21 Cal.4th 1 [87 Cal.Rptr.2d 114, 980 P.2d 829] (*Garcia*). They claim that *Garcia* interpreted paragraph (D) as requiring that there was a presumption of unfitness at the time of the prior juvenile proceeding.

In *Garcia,* the court considered whether the defendant's prior juvenile adjudication for residential burglary (§§ 459, 460) qualified as a strike. Residential burglary was listed as a serious offense in section 1192.7, subdivision (c) but was not listed in Welfare and Institutions Code section 707, subdivision (b). Therefore, the defendant's prior juvenile adjudication met the requirement of paragraph (B)—that "[t]he prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code *or* described in paragraph (1) or (2) as a [serious or violent] felony" (italics added)—but it did not meet the requirement of paragraph (D)—that "[t]he juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code."

In *Garcia,* the trial court and Court of Appeal concluded that drafting error accounted for the discrepancy between paragraphs (B) and (D). The lower courts concluded that, like paragraph (B), paragraph (D) should have included a reference to the lists of serious and violent felonies in sections 667.5, subdivision (c) and 1192.7, subdivision (c). The *Garcia* court disagreed with the lower courts and instead "adopt[ed] an interpretation that harmonizes paragraphs (B) and (D), without doing violence to the language or spirit of section 667, subdivision (d)(3)." (*Garcia, supra,* 21 Cal.4th at p. 6.) The court explained: "In brief, we interpret paragraph (B) as setting out the list of prior juvenile offenses that will qualify as strikes and paragraph (D) as requiring, in addition, that in the prior juvenile proceeding giving rise to the qualifying adjudication the juvenile have been adjudged a ward of the court because of a Welfare and Institutions Code section 707(b) offense, whether or not that offense is the same as the offense currently alleged as a strike." (*Garcia, supra,* 21 Cal.4th at p. 6.)

The *Garcia* court noted the differences between paragraph (B) and paragraph (D): "By their terms, then, paragraph (B) sets out the list of qualifying priors, and paragraph (D) provides that those priors may be counted as strikes

so long as the record of the prior juvenile proceeding shows that the adjudication of wardship was premised at least in part upon an offense listed in Welfare and Institutions Code section 707(b)." (*Garcia, supra,* 21 Cal.4th at p. 8.)

The *Garcia* court explained why the language of paragraph (D) could not be attributed to drafting error: "Since the Legislature, the initiative drafters and the voters have enacted a scheme that includes an explicit requirement, for juvenile adjudications, that the juvenile was at the same time adjudged a ward because of a Welfare and Institutions Code section 707(b) offense, we must presume the Legislature, the drafters and the voters did *not* regard that circumstance as a 'fortuity.' Had they thought the requirement of a Welfare and Institutions Code section 707(b) offense unimportant or anomalous to the purposes of the Three Strikes law, they would presumably have omitted any reference at all to that section. As written, the requirement of paragraph (D) may be seen as serving the purpose of ensuring that the crimes adjudicated in the prior proceeding included at least one offense 'so serious as to raise a presumption of unfitness for treatment in the juvenile court system.' " (*Garcia, supra,* 21 Cal.4th at p. 13.)

Defendants argue that paragraph (D), as interpreted by *Garcia,* requires that there was a presumption of unfitness *at the time* of the prior juvenile proceeding. Defendants claim that this requirement of paragraph (D) was not changed by the enactment of section 667.1. They argue that section 667.1 applies only to paragraph (B), which lists the offenses that qualify as strikes, and does not apply to the "additional requirement" of paragraph (D)—"that the adjudication of wardship was premised at least in part upon an offense listed in Welfare and Institutions Code section 707(b)." (*Garcia, supra,* 21 Cal.4th at p. 8.)

Importantly, *Garcia* was decided in 1999, before the passage of Proposition 21 and the enactment of section 667.1. The *Garcia* court did not have occasion to consider whether the requirement of paragraph (D)—that the prior juvenile adjudication include a Welfare and Institutions Code section 707, subdivision (b) offense—was met if the offense in question was added to Welfare and Institutions Code section 707, subdivision (b) after the adjudication occurred. Therefore, *Garcia* does not resolve the issue presented here.

In interpreting section 667.1, we apply the following rules of statutory construction. ■ " 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent

that is not apparent in its language.' [Citation.] Of course, in construing the statute, '[t]he words . . . must be read in context, considering the nature and purpose of the statutory enactment.' [Citation.]" (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

On its face, section 667.1 applies to "all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667." Nothing in the language of section 667.1 limits its application or excepts paragraph (D)'s reference to Welfare and Institutions Code section 707, subdivision (b). There is no ambiguity in section 667.1; it applies to "all references to existing statutes in subdivisions (c) to (g), inclusive." This clearly includes paragraph (D).

In addition to *Garcia*, defendants rely on *In re Jensen* (2001) 92 Cal.App.4th 262 [111 Cal.Rptr.2d 751] (*Jensen*). However, like *Garcia*, that case involved a defendant whose current crimes were committed *before* the passage of Proposition 21. In *Jensen*, the defendant claimed that his 1980 juvenile adjudication for voluntary manslaughter could not be used as a strike in his 1995 prosecution for being a felon in possession of a firearm. Voluntary manslaughter was not listed in Welfare and Institutions Code section 707, subdivision (b) in 1980 or in 1995. Following *Garcia*, the court agreed that the juvenile adjudication could not be used as a strike because it "did not meet the requirement of paragraph (D)." (*Jensen, supra,* 92 Cal.App.4th at p. 266.) The question whether the prior juvenile adjudication qualified as a strike was properly determined by reference to the list of offenses included in Welfare and Institutions Code section 707, subdivision (b) before the passage of Proposition 21 because the current offense was committed before the passage of Proposition 21. As in *Garcia*, the *Jensen* court was not required to consider the effect of Proposition 21's enactment of section 667.1 on paragraph (D).

At oral argument, defendants argued that the Legislative Analyst's ballot summary of Proposition 21 supports their argument.[6] Defendants pointed to the absence of anything in the ballot summary indicating that Proposition 21 would overrule *Garcia's* interpretation of paragraph (D).

We observe that our analysis is in accordance with the intent of the electorate in passing Proposition 21. "[T]he general object of the initiative is to address the problem of violent crime committed by juveniles and gangs." (*People v. Superior Court (Manduley)* (2002) 27 Cal.4th 537, 575–576 [117 Cal.Rptr.2d 168, 41 P.3d 3].) To achieve this object, among other things,

---

[6] We granted defendant's request for judicial notice of the ballot summary.

Proposition 21 added a number of crimes—including robbery—to the list of violent and serious felonies that qualify as strikes. (27 Cal.4th at p. 577.) Therefore, it would be inconsistent with the intent of the electorate if we were to hold that a prior juvenile adjudication for robbery does not qualify as a strike in cases where the current crimes were committed after the passage of Proposition 21.

█ We conclude that by virtue of section 667.1, a prior juvenile adjudication of robbery qualifies as a strike in cases where the current offense was committed after the passage of Proposition 21 on March 7, 2000.

### C. *Constitutionality of Using Prior Juvenile Adjudications as Strikes*

Defendants alternatively claim that *no* prior juvenile adjudication may constitutionally be used as a strike because there is no right to a jury trial during juvenile proceedings. As noted above, each of the defendants raised this argument below, but in each case the trial court did not have to reach the issue because it found that the prior juvenile adjudication did not fall within section 667, subdivision (d)(3)(D).

We recently rejected this argument, in *People v. Lee* (2003) 111 Cal.App.4th 1310 [4 Cal.Rptr.3d 642] (*Lee*). (See *id.* at pp. 1317–1319 (conc. opn of Premo, J.); *id.* at pp. 1319–1323 (dis. opn. of Rushing, P. J.).)[7] We repeat the majority analysis from *Lee*, along with a discussion of the recent case of *People v. Smith* (2003) 110 Cal.App.4th 1072 [1 Cal.Rptr.3d 901] (*Smith*).

Defendants' claim that a prior juvenile adjudication may not constitutionally be used as a strike because there is no right to a jury trial during juvenile proceedings was rejected in *People v. Fowler* (1999) 72 Cal.App.4th 581 [84 Cal.Rptr.2d 874] (*Fowler*). The *Fowler* court explained: "By enacting the three strikes law, the Legislature has not transformed juvenile adjudications into criminal convictions; it simply has said that, under specified circumstances, a prior juvenile adjudication may be used as evidence of past criminal conduct for the purpose of increasing an adult defendant's sentence. The three strikes law's use of juvenile adjudications affects only the length of the sentence imposed on an adult offender, not the finding of guilt in the adult court nor the adjudication process in the juvenile court. Since a juvenile constitutionally—and reliably [citation]—can be adjudicated a delinquent

---

[7] A petition for review is pending before the California Supreme Court; hence, *Lee* is not yet final. The petition was filed on October 22, 2003 (S119945).*

---

* Reporter's Note: Review denied December 10, 2003.

without being afforded a jury trial, there is no constitutional impediment to using that juvenile adjudication to increase a defendant's sentence following a later adult conviction." (*Id.* at p. 586, fn. omitted.)

After the *Fowler* case was decided, the United States Supreme Court decided *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), which considered the constitutionality of New Jersey's "hate crime" law. That law provided for "an 'extended term' of imprisonment if the trial judge finds, by a preponderance of the evidence, that '[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' [Citation.]" (*Id.* at pp. 468–469.) The court concluded the statute was unconstitutional, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) In reaching its holding, the court explained that prior convictions were exempt from the rule because of the "procedural safeguards attached to any 'fact' of prior conviction." (*Id.* at p. 488.)

After *Apprendi*, the Ninth Circuit decided *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187 (*Tighe*). The *Tighe* court considered whether the defendant's prior juvenile adjudication could constitutionally qualify as a prior conviction under 18 United States Code section 924, subdivision (e), a federal sentencing statute for repeat offenders which did not provide for the right to have a jury find the prior conviction beyond a reasonable doubt. In *Tighe*, a two-to-one decision, the majority stated that "[a]t first blush, it may appear that [a] juvenile adjudication, which Congress has characterized as a 'prior conviction' for the purposes of [the federal statute], falls precisely within *Apprendi's* exception for 'the fact of a prior conviction' . . . . Such an analysis, however, ignores the significant constitutional differences between adult convictions and juvenile adjudications." (*Tighe, supra,* 266 F.3d at pp. 1192–1193.) The *Tighe* majority noted that in *Jones v. United States* (1999) 526 U.S. 227, 249 [143 L.Ed.2d 311, 119 S.Ct. 1215], the Supreme Court had stated: "unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." (*Id.* at p. 249.) The *Tighe* majority referred to *Jones* as stating a "fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions" and likewise read the *Apprendi* opinion as "identify[ing] the right to a jury trial as one of the requisite procedural safeguards" necessary for a prior conviction to be exempt from its rule. (*Tighe, supra,* 266 F.3d at pp. 1193, 1194.) *Tighe* therefore held that "the 'prior conviction' exception to *Apprendi's* general rule must be

limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within *Apprendi's* 'prior conviction' exception." (*Id.* at p. 1194, fn. omitted.)

The reasoning of the *Tighe* majority was rejected in *U.S. v. Smalley* (8th Cir. 2002) 294 F.3d 1030 (*Smalley*), which also considered whether a prior juvenile adjudication could constitutionally qualify as a prior conviction under the federal sentencing statute. Unlike the *Tighe* court, the *Smalley* court did not read *Apprendi* as holding that the right to a jury trial was one of the essential "procedural safeguards" permitting prior convictions to be exempt from its rule requiring a jury finding beyond a reasonable doubt on facts increasing the punishment for crimes. (*Apprendi, supra,* 530 U.S. at p. 488.) The *Smalley* court explained: "We think that while the Court established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles." (*Smalley, supra,* 294 F.3d at p. 1032.) The *Smalley* court ultimately concluded that "juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." (*Id.* at p. 1033.) The court reasoned: "For starters, juvenile defendants have the right to notice, the right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination. [Citation.] A judge in a juvenile proceeding, moreover, must find guilt beyond a reasonable doubt before he or she can convict. [Citation.] We think that these safeguards are more than sufficient to ensure the reliability that *Apprendi* requires." (*Ibid.*)

The court in *U.S. v. Jones* (3d Cir. 2003) 332 F.3d 688 also rejected the reasoning of *Tighe*. That court stated: "Like the *Smalley* court, we find nothing in *Apprendi* or *Jones* [*v. United States, supra,* 526 U.S. 227] . . . that requires us to hold that prior nonjury juvenile adjudications that afforded all required due process safeguards cannot be used to enhance a sentence . . . .[¶] . . . A prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for *Apprendi* purposes." (*U.S. v. Jones, supra,* 332 F.3d at p. 696.)

The court in *Bowden, supra,* 102 Cal.App.4th 387 considered and rejected the argument advanced by defendants. The *Bowden* court distinguished both *Apprendi* and *Tighe*: "In both of those cases the fact that increased the defendant's sentence above the statutory maximum was not tried or proved by the usual criminal standards *in the trial of the current case,* but was a

factual finding solely by a sentencing judge ostensibly as a sentencing consideration. This is not at all like proof of a strike under California's Three Strikes law. Under the Three Strikes law a qualifying prior conviction must, *in the current case*, be pleaded and proved [citation], beyond a reasonable doubt [citations], and the defendant has a statutory right to a jury trial, at least on the issue whether the defendant suffered the prior conviction [citations]. Because the context is so different, *Apprendi* and *Tighe* do not apply here." (*Bowden, supra,* 102 Cal.App.4th at pp. 392–393, fn. omitted.)

The *Bowden* court went further and, like the *Smalley* and *Jones* courts, disagreed with the reasoning of the *Tighe* majority. The *Bowden* court instead agreed with the *Tighe* dissent that *Jones v. United States, supra,* 526 U.S. 227 "does not support" the majority's "broad conclusion." (*Bowden, supra,* 102 Cal.App.4th at p. 393.) The *Bowden* court quoted from the dissenting justice in *Tighe*: " 'In my view, the language in *Jones* stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the predicate crime. For adults, this would indeed include the right to a jury trial. For juveniles, it does not. Extending *Jones'* logic to juvenile adjudications, when a juvenile receives all the process constitutionally due at the juvenile stage, there is no constitutional problem (on which *Apprendi* focused) in using that adjudication to support a later sentencing enhancement.' [Citation.]" (*Id.* at pp. 393–394, quoting *U.S. v. Tighe, supra,* 266 F.3d at p. 1200 (dis. opn. of Brunetti, J.).)

*Bowden*'s analysis of this issue was recently followed by the majority in *People v. Smith, supra,* 110 Cal.App.4th 1072. (See *id.* at pp. 1082–1108 (dis. opn. of Johnson, J.).) The *Smith* majority similarly distinguished *Tighe* as holding "only that, under *Apprendi*, to enhance an adult offender's sentence the fact of the prior juvenile adjudication must be presented to a jury and proved beyond a reasonable doubt. [Citation.]" (*Id.* at p. 1077, fn omitted.) The *Smith* majority also found that use of a prior juvenile adjudication as a "strike" did not run afoul of *Apprendi*: "[N]othing in *Apprendi* or the cases upon which it relied limits the Legislature's authority to identify a prior juvenile adjudication involving a serious or violent offense or any other fact it deems reasonably relevant for purposes of imposing an increased sentence [citation], provided the existence of the elements it has specified for sentence enhancement (other than a prior conviction) are submitted to a jury and found to exist beyond a reasonable doubt. [Citation.]" (*Id.* at p. 1078.)

We join the *Bowden* court and the *Smith* majority in distinguishing and disagreeing with the *Tighe* majority. ■ First, as *Bowden* and *Smith* recognized, California's Three Strikes law requires that a prior conviction

(including a prior juvenile adjudication) be proved beyond a reasonable doubt, and it provides for the right to a jury trial on the question whether a defendant has suffered a prior conviction. The federal sentencing law considered in *Tighe* did not provide such procedural safeguards. In fact, the *Tighe* majority recognized this distinction, pointing out that "several states' recidivism statutes treat prior convictions as elements of a crime or provide for a jury determination of the fact of a prior conviction." (*Tighe, supra,* 266 F.3d at p. 1192, fn. 3.) Moreover, we agree with the *Bowden* court that the procedural safeguards provided in juvenile adjudications satisfy the concerns of the Supreme Court in *Apprendi*. ■ A juvenile has the right to notice of the charges against him or her, the right to counsel, the privilege against self-incrimination, the right to confrontation and cross-examination, the protection against double jeopardy, and the allegation must be proved beyond a reasonable doubt. (See *Fowler, supra,* 72 Cal.App.4th at p. 585.)

■ We conclude here, as we did in *Lee,* that a prior juvenile adjudication may constitutionally be used as a "strike" despite the fact that there is no right to a jury trial in juvenile proceedings. In sum, we reject defendants' claims that their prior juvenile adjudications for robbery could not be used as strikes.

## III.  DISPOSITION

Case No. H025406 (*Andrades*): The petition for writ of mandate is denied as moot in light of our issuance of a peremptory writ of mandate in case No. H025428 (*Andrades*).

Case No. H025428 (*Andrades*): Let a peremptory writ of mandate issue, commanding respondent court to (1) vacate its order dismissing the Three Strikes law allegation that defendant suffered a prior juvenile adjudication for robbery, (2) enter a new and different order finding that a prior juvenile adjudication for robbery does qualify as a strike under section 667, subdivision (d)(3) if the current offense was committed after March 7, 2000, (3) hold a new hearing on the strike allegation, (4) vacate its sentencing order, and (5) hold a new sentencing hearing.

Case No. H025513 (*Beavers*): Let a peremptory writ of mandate issue, commanding respondent court to (1) vacate its order dismissing the Three Strikes law allegation that defendant suffered a prior juvenile adjudication for robbery, (2) enter a new and different order finding that a prior juvenile adjudication for robbery does qualify as a strike under section 667, subdivision (d)(3) if the current offense was committed after March 7, 2000, (3) hold a new hearing on the strike allegation, (4) vacate its sentencing order, and (5) hold a new sentencing hearing.

Case No. H025569 (*Fisher*): Let a peremptory writ of mandate issue, commanding respondent court to (1) vacate its order dismissing the Three Strikes law allegation that defendant suffered a prior juvenile adjudication for robbery, (2) enter a new and different order finding that a prior juvenile adjudication for robbery does qualify as a strike under section 667, subdivision (d)(3) if the current offense was committed after March 7, 2000, (3) hold a new hearing on the strike allegation, (4) vacate its sentencing order, and (5) hold a new sentencing hearing.

Premo, Acting P. J., and Wunderlich, J., concurred.

The petitions of real parties in interest for review by the Supreme Court were denied March 3, 2004. Kennard, J., was of the opinion that the petitions should be granted.