Filed 8/2/24  P. v. McDarment CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARWIN DEAN MC DARMENT,<br><br>Defendant and Appellant. | F085045<br><br>(Super. Ct. No. VCF257564)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Scott N. Cameron, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Rachelle A. Newcomb, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Marwin Dean McDarment was charged on December 14, 2012, by information with three counts of attempted murder (Pen. Code, § 187, subd. (a);[1] counts 1 [Peace Officer Brad McLean], 3 [Peace Officer Christopher Wenzinger] and 5 [Peace Officer Mark Hatch]); three counts of assault on a peace officer with a semiautomatic firearm (§ 245, subd. (d)(1); counts 2 [McLean], 4 [Wenzinger], and 6 [Hatch]);[2] one count of possession of a firearm by a felon (§ 12021, subd. (a)(1); count 7); one count of illegal possession of ammunition (§ 12316, subd. (b)(1); count 8); and one count of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 9).[3]

The information alleged as to counts 1, 3, and 5, personal and intentional discharge of a weapon (§ 12022.53, subd. (c); as to counts 1, 3, 4, 5, and 6, that McDarment personally used a firearm (§ 12022.53, subd. (b)); as to all counts that McDarment had suffered three prior strike convictions (§§ 1170.12, subds. (a)–(j); 667, subds. (b)–(i)); as to counts 1, 2, 3, 4, 5, and 7, that McDarment had suffered two prior serious felonies (§ 667, subd. (a)(1)); as to all counts that McDarment had two prior prison terms (§ 667.5, subd. (b)); and as to counts 1 through 6, that McDarment personally used a firearm (§ 12022.5, subds. (a), (d)).[4]

A jury convicted McDarment on August 8, 2022, of counts 1 and 3, and found true the firearm allegations; count 6 and found true the firearm allegations; and counts 7 and 8. It acquitted McDarment of counts 2, 4 and 5. In a bifurcated proceedings, the trial court found true the prior conviction allegations.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     The section 245, subdivision (d)(2) offenses as to counts 2, 4 and 6, were later amended by interlineation to allege instead section 245, subdivision (d)(1) offenses, deleting the term "semiautomatic."

[3]     Count 9 was later dismissed on motion of the People.

[4]     The section 12022.5 allegations as to counts 2, 4, and 6 were later amended by interlineation to instead allege a section 12022.53, subdivision (c) enhancement.

2.

On September 21, 2022, McDermott was sentenced to a total of 216 years to life, as follows: on count 1, 45 years to life plus 20 years for the section 12022.53, subdivision (c) firearm enhancement, plus 10 years for the section 667, subdivision (a)(1) prior serious felony enhancement; on count 3, a consecutive 45 years to life, plus 20 years for the section 12022.53, subdivision (c) firearm enhancement, plus 10 years for the section 667, subdivision (a)(1) prior serious felony enhancement; and on count 6, a consecutive sentence of 36 years to life, plus 20 years for the section 12022.53, subdivision (c) firearm enhancement, plus 10 years for the section 667, subdivision (a)(1) prior serious felony enhancement.  The sentences for counts 7 and 8 were stayed under section 654.

On appeal, we disagree with McDarment that his convictions on counts 1,3 and 6 must be reversed because the trial court failed to give a unanimity instruction.  We agree with the remainder of his contentions that (2) there was insufficient evidence his prior 2004 assault conviction was a strike; (3) there was insufficient evidence his 1996 prior juvenile adjudication for assault was a strike; (4) there was insufficient evidence that his 2004 assault conviction for assault was a serious felony for purposes of the five-year section 667, subdivision (a)(1) enhancement; (5) in the event argument number 4 is incorrect, one of his section 667, subdivision (a)(1) five-year enhancements must be stricken because the two underlying convictions were not brought and tried separately; (6) both five-year section 667, subdivision (a)(1) prior serious felony enhancements imposed on count 6 must be stricken as they were not properly alleged; (7) the abstract of judgment must be corrected to reflect the proper number of presentence custody credits. We remand for resentencing and in all other respects affirm.

3.

## STATEMENT OF THE FACTS

While on parole, McDarment had a parole violation hearing a few weeks before September 9, 2011.[5] Due to a mistake made at the disposition phase of that hearing, McDarment was given credit for time served and released from custody even though, under Board of Parole Hearing "policy", he was supposed to receive a set amount of time. As a result, a new disposition hearing was set for after September 9, at which time it was possible McDarment could be taken back into custody. McDarment was informed that he had to come back for another disposition hearing due to the hearing officer's mistake.

McDarment was on an ankle monitor at the time of his release. Sometime on September 8, the monitor went dead. At the time, there was zero tolerance for failing to charge the device at least one hour every 12 hours, regardless of whether the device went dead or not. The monitor would warn that its battery was low through vibrations every 10 minutes.

On September 9, McDarment had several encounters with Winona Jaso, Dakota Buckskin-Bell, and other members of their family on the Tule Indian Reservation in Tulare County, during which he cussed and directed racial slurs at them. Jaso and Buckskin-Bell both knew McDarment and had not previously had problems with him.

The encounters culminated in McDarment coming to Jaso's house that afternoon. McDarment was driving his red-burgundy Toyota pickup. At Jaso's house, McDarment pulled out a black revolver and pointed it at Jaso's brothers.

Jaso's mother yelled at McDarment that she was on the phone with police, even though she was in fact on the phone with a tribal council member. McDarment drove off.

---

[5] All further references to dates are to 2011, unless otherwise stated.

Around 3:30 p.m. that day, multiple law enforcement units responded to the call of a disturbance with weapons at the reservation. Tulare County Sheriff's Lieutenant Christopher Wenzinger and Deputy Brad McLean were among the responding units.

Deputy McLean was driving behind Lieutenant Wenzinger on Reservation Road when the two encountered McDarment driving his pickup in the opposite direction. Lieutenant Wenzinger described McDarment as having a "smirk or a smile" on his face. The officers made a U-turn and followed McDarment. McClean activated his overhead lights to make a stop.

McDarment came to a stop at a turnout, and McLean and Wenzinger pulled in behind McDarment. The officers began a "felony" or "high risk" stop, in which the driver is told to shut off the vehicle, throw the keys out of the car, place their hands outside the window, and then walk back to where the officers are.

As McLean told McDarment to shut off the vehicle and show his hands, McDarment put his left hand outside the lowered window. When Deputy McLean again told McDarment to shut off the vehicle and put his hands outside the window, McDarment turned, put his right hand and a firearm outside the window, pointed the gun in the officer's direction and fired a shot.

McLean dropped down for cover, causing Lieutenant Wenzinger to believe he had been shot. McLean then returned fire and attempted to inform dispatch that shots were fired. He then moved toward the rear passenger side of his vehicle, while Wenzinger moved to the rear driver's side of McLean's vehicle.

The officers continued to tell McDarment to drop his gun and exit the vehicle. McLean estimated 30 to 40 seconds elapsed before McDarment again put his right hand out the window, pointed in the direction of the officers and fired another shot. Both officers returned fire. At one point, when Lieutenant Wenzinger attempted to converse with McDarment over the PA loudspeaker, McDarment responded, "Fuck you, motherfucker."

5.

While the officers waited for the arrival of more units, McClean conducted a "tactical reload" and then covered Wenzinger while he went to the back of his vehicle to retrieve more ammunition. The officers returned fire "every time" McDarment raised his gun.

Tule River Tribal Police Patrol Officer Mark Hatch and Community Service Officer Sergio Sanchez were in Officer Hatch's patrol unit when they heard a report of shots fired. Hatch activated his light and accelerated. Hatch's patrol vehicle came around a bend and saw McDarment's vehicle with McLean and Wenzinger's vehicles behind it. Hatch saw two bullet holes in the windshield of McDarment's Toyota. Hatch stopped near Wenzinger's vehicle. Hatch got out of his vehicle and told Service Officer Sanchez to take the vehicle down the road to block off traffic.

Hatch went to the rear passenger corner of McLean's vehicle. McLean retrieved a shotgun from his patrol vehicle and, as he was racking a round, saw McDarment present his firearm and heard a gunshot. Hatch heard a loud bang and felt something pass by his head. Both McLean and Hatch returned fire. Hatch thought he heard another shot from the Toyota.

At one point, Wenzinger told McDarment " '[N]obody's gotta die here. Throw the gun out, give up. Let's all go home' " " 'But if you point that gun at me again, I'm going to shoot you.' " McDarment replied with something like, " 'You've already shot me.' "

McDarment eventually threw his gun out the window and then dropped to the ground outside the driver's side of his vehicle. McDarment was bloody, "flailing" and "angry", and continued to curse at the officers. McDarment had multiple gunshot wounds, first aid was administered and an ambulance called.

McDarment's weapon was a .45-caliber single-action revolver. There were three fired casings and three live rounds in the cylinder of the revolver. A box of 16 rounds of .45-caliber ammunition was found under the driver's seat of the Toyota. There were no spent casings connected with the revolver in or around the truck.

6.

Radio logs indicated that the "first shots fired" call went out at 3:54 p.m., additional shots fired call went out at 3:58 p.m., and an in-custody call went out at 4:02 p.m.

***Defense***

McDarment testified that he was aware that he had to go back for a parole hearing because something had to be corrected, but he did not believe this meant he was going into custody. McDarment acknowledged that, while his ankle monitor was off on September 9, this had happened on numerous previous occasions as his battery would die faster than normal because of poor reception. McDarment claimed he had an understanding with his parole officer to take care of the battery issue at the end of his 10-hour work shifts.

McDarment knew he was not supposed to have a firearm as a convicted felon, but all of his neighbors had guns – he lived out in the country, and they told him he should have one too. McDarment bought his gun from a neighbor and his uncle gave him ammunition. He acknowledged having the gun and ammunition in his truck on September 9.

McDarment described the encounter, which occurred earlier that day, when Jaso and her brothers were "chitchatting" on the road, blocking traffic, and he told them to get off the road. Later that day, the same group was smoking while in their car in the middle of the road, again blocking traffic. McDarment yelled at them. They yelled back and said that if McDarment wanted to fight, he should come to their house. When McDarment clocked out that day, Jaso threatened to file a complaint on McDarment for " 'talking shit' " to her brothers, so McDarment decided to go to their house to talk to them. When he arrived, he could tell by the demeanor of the brothers that they were looking for a fight, so he showed them the gun, which was unloaded. The brothers scattered.

7.

McDarment then went to his uncle's house, where he stayed long enough to shoot six rounds, reloaded the gun, and then planned to get gas and go somewhere where he could use his cell phone to call his parole officer. While he was driving, he saw law enforcement vehicles pass the other direction, and then saw Deputy McLean's vehicle get behind him and its lights activate.

McDarment parked on a turnout. At this point, he knew he would likely be booked into custody. According to McDarment, by the time he parked his Toyota, Deputy McLean was already out of his vehicle with his gun drawn. McDarment put his hands in front of himself in surrender position and waited for commands.

Deputy McLean told him to shut off his vehicle and put his hands out the window. Instead, McDarment grabbed his gun and stuck it out the window because he "knew that's why they were pulling [him] over." When he did so, he was shot in the back of the neck and twice in the shoulder. McDarment claimed that his gun somehow accidently discharged and struck inside the vehicle somewhere. McDarment thought the hammer of the gun was pulled back just one "click" which would apply the safety, a second click would "unload" the cylinder to allow it to be loaded, and a third "click" would fire the gun. McDarment claimed not to grab the trigger or hammer, just the handle.

McDarment denied facing towards the officer the way Lieutenant Wenzinger described. McDarment testified that he was initially knocked unconscious and came to, landing sideways in this truck, looking at the ceiling of the cab. Every time he tried to obey commands to get out and throw the gun out, he would become visible and the officers would fire at him, and he would go back down. Eventually, McDarment deliberately fired two round harmlessly toward the mountains to "create enough space" so that he could obey the officers' commands. After firing the second round, he was able to get the gun out of the vehicle, open the door, and fall to the ground.

On cross-examination, McDarment admitted he had three prior serious or violent felony convictions. He acknowledged that his possession of a firearm, possession of

8.

ammunition, pointing a gun at the Jaso family members, and his GPS monitor dying were each incidents that could subject him to a parole violation.

## DISCUSSION

## I.   JURY INSTRUCTIONS

McDarment contends that the trial court erred and he was deprived of a fair trial when it failed to, sua sponte, give a unanimity instruction (CALCRIM No. 3500) as to the attempted murder counts, 1, 3, and 5.  As argued by McDarment, the evidence at trial was that he fired three shots from the revolver, that there was a "distinct interval of time" between the shots, and that the total amount of time between the first shot and third shot was approximately four minutes, but that the prosecutor did not make an election as to which shot or shots the jury had to rely on to convict on counts 1, 3 and 5, nor did the trial court instruct that they needed to be unanimous as to which shot or shots supported the convictions in those counts.  We find no error.

### A.   *Applicable Law and Analysis*

The trial court is required to " 'instruct[] the jury on all the general principles of law raised by the evidence which are necessary for the jury's proper understanding of the case.' " (*People v. Ramirez* (2021) 10 Cal.5th 983, 1035.)  "Based on the principle that a defendant in a criminal jury trial has the right to a unanimous verdict, 'cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.'  [Citation.]  'This requirement of unanimity as to the criminal act "is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." ' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 627.)  "A unanimity requirement generally applies to acts that could have been charged as separate offenses, and a unanimity instruction must be given ' "only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." ' " (*People v. Seaton* (2001)

9.

26 Cal.4th 598, 671.)  However, no unanimity concerns are implicated here since a unanimity instruction is only needed " 'when conviction on a *single count* could be based on *two or more* discrete criminal events.' " (*People v. Russo* (2001) 25 Cal.4th 1124, 1135, italics added.)

Here, the jury was presented with three separate acts of attempted murder in counts 1, 3 and 5.  Thus, the trial court had no duty to instruct on unanimity because the acts at issue were charged as separate counts.  (See *People v. Beardslee* (1991) 53 Cal.3d 68, 92 ["A requirement of jury unanimity typically applies to acts that could have been charged as separate offenses"].)

Further, a unanimity instruction is unnecessary where the prosecutor elects the specific conduct that forms the basis for each count.  "When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.)  " 'The prosecution can make an election by "tying each specific count to specific criminal acts elicited from the victims' testimony"—typically in opening statement and/or closing argument. [Citations.] ... [Citation.]  [¶]  Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it.' " (*People v. Brugman, supra,* 62 Cal.App.5th at p. 627.)

Here, despite McDarment's insistence to the contrary, the prosecutor expressly stated in closing argument that count 1 consisted of the "attempted murder of Deputy Brad McLean."  Count 3, the prosecutor argued, "will be attempted murder" as it relates to Lieutenant Chris Wenzinger.  And, the prosecutor continued, count 5 would be for the attempted murder of Public Safety Officer Mark Hatch.  Thus, the prosecutor's closing argument clearly assigned specific conduct to each count.  Furthermore, the verdict forms

10.

on the attempted murder allegations specifically list each victim as to a separate count – count 1, "B. McLean," count 3, "C. Wenzinger," and count 5, "M. Hatch." It should be noted that McDarment was acquitted of count 5, the allegation of attempted murder against Officer Hatch, further bolstering the conclusion that each of the attempted murder allegations was specific to an individual.

Based on the foregoing, the trial court did not err by failing, sua sponte, to issue a unanimity instruction.

## II. SENTENCING ISSUES

Because McDarment makes numerous sentencing claims on appeal, we first set out, in detail, the counts and allegations McDarment was convicted of (counts 1, 3, 6, 7, & 8) and how he was sentenced.

The information alleged, as to each substantive offense of which he was convicted, that McDarment had suffered three prior strikes within the meaning of the "Three Strikes" law – a section 245, subdivision (a)(1) juvenile conviction on February 22, 1996; and two convictions on March 23, 2004, one for sections 664, 215 and the other for section 245, subdivision (a)(1). It was also alleged, as to counts 1 and 3, that he had suffered two prior serious felonies within the meaning of section 667, subdivision (a)(1) – a conviction for sections 664, 215 and section 245, subdivision (a)(1) – both occurring on March 23, 2004.

McDarment was sentenced to 126 years to life plus 90 years as follows:

Count 1: (§§ 664, 187) 45 years to life, consisting of 15 years to life, times 3 (§ 1170.12, subd. (c)(2)(A)(i)), plus 30 years, consisting of 20 years (§ 12022.53, subd. (c)), plus 10 years, times 2 (§ 667, subd. (a)(1)).

Count 3: (§§ 664, 187) 45 years to life, consisting of 15 years to life, times 3 (§ 1170.12, subd. (c)(2)(A)(i)), plus 30 years, consecutive, consisting of 20 years (§ 12022.53, subd. (c)), plus 10 years, times 2 (§ 667, subd. (a)(1)).

Count 6: (§ 245, subd. (d)(1)) 36 years to life, consisting of 6 years to life (§ 1170.12, subd. (c)(2)(A)(iii), plus 30 years consecutive, consisting of 20 years (§ 12022.53, subd. (c)), plus 10 years, times 2 (§ 667, subd. (a)(1).

Count 7: (Former § 12021, subd. (a)(1)), four years, stayed, consisting of two years the midterm, times 2 (§ 1170.12, subds. (c)(1) & (c)(2)(C)).

Count 8: (Former § 12316, subd. (b)(1), four years stayed, consisting of two years the midterm, times 2 (§ 1170.12, subds. (c)(1) & (c)(2)(C).

### A. *Was There Insufficient Evidence to Prove McDarment's 2004 Assault Conviction Was a Strike?*

McDarment asserts that there was insufficient evidence that his March 23, 2004 conviction for assault qualified as a prior "strike" under the Three Strikes law. Specifically, he contends that the record of conviction shows that the conviction was for assault by means of force likely to cause great bodily injury, which does not constitute a strike, and not for assault with a deadly weapon, which does constitute as a strike. The People agree, as do we.

The information specifically alleged the following strikes: one strike for case No. Y74809, a violation of section 245, subdivision (a)(1) with a conviction date of February 22, 1996; and two strikes for case No. TCS122267—an attempted violation of section 215 and a violation of section 245, subdivision (a)(1), with a conviction date for both offenses of March 23, 2004.

A "Register of Actions" for "CF122267: People vs. McDarment, Marwin Dean" describes "Ct: 1 PC664/215(a) Attempted Carjacking" with a 30-month mid-term sentence that was "[s]tayed on 3/23/2004" and "Ct: 3 PC245(a)(1) Assault: Deadly Weapon Other Than Firearm" with a three-year mid-term sentence that was "[i]mposed on 3/23/2004." The same registry of actions indicates as to count 3 a special allegation of "PC12022(a)(1)—Involve firearm: Armed Or Not[.]"

12.

A minute order dated February 24, 2004, indicates that McDarment pled no contest to "CT 1 664/215(a)PC, Ct 3 245(a)(1)PC w/spec alg 12022(a)(1)PC admitted[.]" The indicated sentence was four years eight months.

An abstract of judgment with a hearing date of March 23, 2024, indicates McDarment was convicted of "assault by means of force" (§ 245, subd. (a)(1)) and sentenced to three years, plus one year for a section 12022, subdivision (a), enhancement, with a consecutive eight-month sentence imposed for possession of a controlled substance and a stayed 30-month sentence imposed for attempted carjacking. The total sentence was four years eight months. An FBI document describes the 2004 offense as "FORCE/ADW NOT FIREARM: GBI."

Before McDarment's testimony at trial on the current offenses, the trial court told McDarment that his priors could be brought in for impeachment. The priors would be sanitized to "two prior serious and violent felonies." However, if appellant "want[ed] to argue about those priors" then the prosecutor would have the ability to present the certified priors to the jury. Defense counsel stated that McDarment was "not really contesting" that the prior convictions existed. The court stated that it would be using the "245 and the 215—the attempted 215. Carjacking" as the impeachment convictions. The court again emphasized that if McDarment somehow denied the convictions while testifying, the prosecutor would be able to bring in the certified records of the convictions, and there would be no need for a bifurcated trial.

During cross-examination of McDarment, the prosecutor asked, "So isn't it true, sir, that you actually have three prior serious or violent felony convictions?" McDarment answered, "Yes, I do."

After the jury verdicts, a hearing was held on the prior convictions. Both counsel submitted without argument. The trial court found true the prior conviction allegations.

At trial, the prosecution alleged McDarment had, inter alia, suffered a 2004 prior conviction for assault – "TCS122267 PC245A1 3/23/04" - and that the prior conviction

13.

qualified as a prior "strike" within the meaning of California's "Three Strikes" legislation.  At a bifurcated hearing, the trial court found the 2004 alleged section 245, subdivision (a)(1) prior conviction "true."   As such, because he had "two or more prior serious or violent felony convictions," it was used to impose "[t]hree times the term otherwise provided as punishment for each current felony .…"  (§ 1170.12, subd. (c) (2)(A)(i).)

Under the Three Strikes law, a qualifying prior conviction must be pleaded and proven beyond a reasonable doubt in the current case.  (*People v. Superior Court* (*Andrades*) (2003) 113 Cal.App.4th 817, 833.)  Where the mere fact of conviction under a particular statute does not establish a serious felony allegation, the sentencing court may examine the record of the prior conviction to determine the nature or basis of the crime for which the defendant was convicted.  (*People v. Learnard* (2016) 4 Cal.App.5th 1117, 1122.)  If the record of conviction does not disclose how the offense was committed, the court must presume the conviction was for the least serious form of the offense.  (*Ibid*.)  In that case, if the statute could be violated in a way that does not qualify for the enhancement, the evidence is insufficient to support the enhancement. (*Ibid*.)

On appeal, this court reviews the record "in the light most favorable to the judgment to determine whether it is supported by substantial evidence."  (*People v. Learnard, supra,* 4 Cal.App.5th at p. 1122.)  " 'In other words, we determine whether a rational trier of fact could have found that the prosecution' " sustained its burden of proof beyond a reasonable doubt.  (*Id*. at pp. 1122–1123.)

In 2004, section 245, subdivision (a)(1) provided, "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by .…"  Section 12022, subdivision (a)(1), which McDarment pled to at the time of his 2004 assault conviction, provided for an additional term of imprisonment of one year for a person armed with a firearm in the commission or attempted commission of a felony.

Under section 1192.7, subdivision (c)(23), "serious felony" includes "any felony in which the defendant personally used a dangerous or deadly weapon" and under subdivision (c)(31) of the same section it includes any "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245.…"  Thus, a conviction in 2004 for violation of section 245, subdivision (a)(1) would not show the offense was for a serious felony unless there were a further showing that it was for assault with a deadly weapon, or, if it were for assault by means of force likely, that it involved use of a deadly weapon or actual personal infliction of great bodily injury.  (*People v. Banuelos* (2005) 130 Cal.App.4th 601, 605 (*Banuelos*).)

In *Banuelos*, a statement in the abstract of judgment described the offense as " 'ASSAULT GBI W/DEADLY WEAPON' " and a fingerprint card similarly described the offense as " 'CT 1 PC245(A)(1) ASSLT GRT BDLY INJ W/DDLY WPN.' " (*Banuelos, supra,* 130 Cal.App.4th at p. 605.)  The *Banuelos* court held that this was insufficient evidence to prove the prior serious felony and strike allegations.  (*Id*. at p. 607.)

> "Although the notation could be read to mean that the assault was committed both by means of force likely to produce great bodily injury *and* with a deadly weapon, it could also be construed as a shorthand description of the criminal conduct covered by section 245, subdivision (a)(1)—assault by means of force likely to produce great bodily injury *or* with a deadly weapon." (*Id*. at p. 606.)

The *Banuelos* court rejected the assertion that the description of the crime in the probation report as assault with a deadly weapon, or defense counsel's statement at sentencing, that the appellant had used a car during the commission of the assault (and a car qualifies as a deadly weapon) provided support to uphold the finding, as both involved multiple levels of hearsay and, in any event, were not actually presented at the trial.  (*Ibid*.)

By contrast, in *People v. Delgado* (2008) 43 Cal.4th 1059, 1060, 1064, the abstract in question described the statutory violation as "PC" and "245(A)(1)" and described the crime as "Asslt w DWpn." This was sufficient evidence to prove the prior serious felony conviction: "This latter description tracks one, but only one, of the two specific, discrete, disjunctive, and easily encapsulated forms of aggravated assault set forth in section 245(a)(1)." (*Id*. at p. 1069.)

Here, the notation of "assault by means of force" in the abstract of judgment refers only to the prong of the statute that would *not* constitute a serious felony. (Compare *People v. Delgado, supra,* 43 Cal.4th at p. 1069 [sufficient evidence offense was a strike because abstract referred only to qualifying offense prong of statute].) The FBI document appears to refer to both prongs of the statute: "FORCE/ADW NOT FIREARM: GBI" and thus does not constitute substantial evidence of the strike. (Compare *Banuelos, supra,* 130 Cal.App.4th at p. 606 [description of both prongs of statute insufficient to infer defendant committed assault with deadly weapon prong].) And, without more, the registry of actions, which appears to clearly describe conduct that would be a strike, is not convincing enough, by itself, to constitute sufficient evidence McDarment's conduct constituted a strike, in light of the description in the abstract of judgment that appears to refer only to assault with force likely. (See *Banuelos,* at p. 607 [statements of probation report and of counsel at sentencing insufficient to uphold finding]; see also *People v. Learnard, supra,* 4 Cal.App.5th at p. 1123 [trial court improperly disregarded references in information and abstract of judgment to assault by means of force likely].)

Under these circumstances, there is insufficient evidence McDarment's 2004 conviction for assault qualifies as a strike and the "strike" allegation as to that conviction cannot stand. Neither double jeopardy nor due process bars a retrial on the prior conviction allegation, and on remand, the People may present additional evidence to demonstrate that the 2004 assault was an assault with a deadly weapon or involved other conduct making that crime a serious felony. (See *Banuelos, supra,* 130 Cal.App.4th at

16.

p. 607, citing *People v. Monge* (1997) 16 Cal.4th 826, 839; *People v. Barragan* (2004) 32 Cal.4th 236, 239 ["[R]etrial of a strike allegation is permissible where a trier or fact finds the allegation to be true, but an appellate court reverses that finding for insufficient evidence"].)  Such evidence must be limited to that contained in the record of conviction. (*People v. Reed* (1996) 13 Cal.4th 217, 226.)

If the trial court determines that the prior conviction constitutes a serious felony conviction, the sentence for the serious felony allegation shall be reinstated.  Moreover, McDarment does not challenge the validity of the strike finding as to the attempted carjacking offense, which may be applied to his sentence.

McDarment makes the additional argument that his 2004 conviction for assault cannot be used as a strike because it appears to have resulted from the same act that constituted the 2004 attempted carjacking conviction, which was also alleged and used as a prior strike.  However, strike priors do not have to be brought and tried separately; multiple strikes can arise out of a single case.  (*People v. Fuhrman* (1997) 16 Cal.4th 930, 939.)  Nothing within the Three Strikes law "suggests that when a defendant has sustained a prior conviction for an offense designated as a violent or serious felony, the prior conviction may be counted as a strike for purposes of sentencing under the Three Strikes law only if the prior conviction was for an offense that was 'brought and tried separately' from another offense that also qualified as a violent or serious felony."  (*Id.*, at p. 938.)  (However, see *People v. Vargas* (2014) 59 Cal.4th 635, 638–639 [prior robbery conviction and prior carjacking conviction were from the same act and same victim; one must be dismissed].)  Because we find insufficient evidence to support the 2004 conviction for assault as a strike, we need not reach the issue of whether the assault conviction stemmed from the same criminal act as the attempted carjacking.

### B. *Was There Insufficient Evidence that McDarment's Juvenile Adjudication for Assault Was a Strike?*

McDarment also asserts there was insufficient evidence that his 1996 juvenile adjudication for assault was a strike. McDarment specifically contends there was insufficient evidence he was age 16 or older at the time that he committed the offense. McDarment further asserts that the document (Exh. 28) used to support the conviction was not reasonable, credible, and of solid value because it states a "legal impossibility" in that it states his conviction was for assault with a handgun, but subdivision (a)(1) punished assault with force likely to produce great bodily injury or with a deadly weapon or instrument other than a firearm. The People agree, as do we, that there was insufficient evidence that he committed the offense when he was at least 16 years old. Accordingly, we need not reach the contention regarding the contradictory nature of the offense listed in the document.

Crimes committed by juveniles under age 16 do not qualify as strikes. (§ 667, subd. (d)(3)(A); *People v. Davis* (1997) 15 Cal.4th 1096, 1100; *In re Myresheia W.* (1998) 61 Cal.App.4th 734,739.)

Here, Division of Juvenile Justice records show McDarment was committed to the Division of Juvenile Justice (formerly Youth Authority) by the Tulare County Juvenile Court on January 22, 1996 "for WIC 602/777 Change of Order; PC 245(a)(1) ADW (handgun)/PC12022.5(a) Personal Use of a Firearm (handgun)(F); PC459 Burglary, 2nd degree (M); PC 626.10A Weapons (M); BC 25662(A) Disorderly Conduct (M)" and was discharged on August 29, 2003. An attachment contained the same information with a notation of "DISHONORABLE DISCHARGE" and a certification stamp, signed, that this was a correct copy of the original on file. The Division of Juvenile Justice was unable to provide more detailed records because case files on discharged wards were not retained beyond a period of seven years.

At the hearing on the priors, the trial court stated, "He was 17 years old at the time. I need to make sure. It only qualifies as a strike if they're over 16." The trial court

18.

later found the convictions had been proven. However, there was insufficient evidence McDarment was at least age 16 at the time of the strike. While he turned 16 in July 1994, and he was committed to Youth Authority in January 1996, almost a year and a half later, for the violation of section 245, subdivision (a)(1), there is no indication in this record as to when he *actually committed* the offense. Accordingly, the strike has not been proven beyond a reasonable doubt.

Again, as noted in part II.A., above, on remand, the People may present additional evidence to prove that the offense was a strike. (*Banuelos*, *supra*, 130 Cal.App.4th at p. 607, citing *People v. Monge, supra,* 16 Cal.4th at p. 839; *People v. Barragan, supra,* 32 Cal.4th at p. 239 ["[R]etrial of a strike allegation is permissible where a trier or fact finds the allegation to be true, but an appellate court reverses that finding for insufficient evidence"].) If the trial court determines that the prior conviction constitutes a serious felony conviction, the sentence as to the serious felony allegation shall be reinstated.

C. *Was There Insufficient Evidence that McDarment's Prior 2004 Conviction for Assault Was a Serious Felony for Purposes of the Five-year Enhancement under Section 667, Subdivision (a)(1)?*

For similar reasons specified in part II.A., above, McDarment asserts his five-year serious felony enhancements imposed on counts 1, 3 and 6[6] for the 2004 assault conviction must be stricken because there was insufficient evidence the conviction was a serious felony. The People agree, as do we. (See *Banuelos, supra,* 130 Cal.App.4th at p. 607 [striking the true finding underlying both the five-year enhancement and the strike allegation].)

McDarment also asserts that one of the two five-year prior serious felony enhancements must be stricken because they were not brought and tried separately within the meaning of section 667, subdivision (a)(1). Even though we strike the true finding as

---

[6] But see Argument E., below, as we further address the imposition of the five-year enhancements on count 6, where there is a question of whether both five-year priors must be stricken.

to the prior assault conviction, we address McDarment's further assertion on the merits and agree.

Section 667, subdivision (a)(1), provides: "A person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction that includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately."

The California Supreme Court has construed the phrase "brought and tried separately" to mean that "the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d 131, 136; *People v. Ebner* (1966) 64 Cal.2d 297, 304 ["prior felony proceedings must be totally separate, not only during proceedings before trial but also as to those leading to the ultimate adjudication of guilt"].)

The information alleged two prior serious felonies under section 667, subdivision (a)(1): a conviction for "PC664/125" and a conviction for PC245A1," both from case No. TCF122267 and both with a conviction date of March 23, 2004. As the People concede, and we agree, it does not appear here that the underlying proceedings for the serious felonies alleged were separate within the meaning articulated in *In re Harris, supra,* 49 Cal.3d at page 136, and *People v. Ebner, supra,* 64 Cal.2d at page 304.

Thus, the 2004 assault conviction used to impose the section 667, subdivision (a)(1) enhancement as to counts 1, 3, and 6[7] must be stricken.

---

**7**    See footnote 6.

20.

### D. *Must Both "Nickel Priors"*[8] *Imposed on Count 6 be Stricken Because Those Enhancements Were Not Alleged in Count 6?*

McDarment next asserts both section 667, subdivision (a)(1) five-year serious felony enhancements imposed on count 6 based on the two 2004 prior serious felony convictions must be stricken because they were not specifically pled in the charging documents. While the information alleged the prior serious felony convictions pursuant to section 667, subdivision (a)(1) as to counts 1 and 3, it was not alleged as to count 6, although the underlying felonies were alleged in that count as prior prison term enhancement allegations (§ 667.5, subd. (b)) and prior strike allegations (§§ 1170.12, subds. (a)–(d); 667, subds. (b)–(i)).

The People contend that, because a prior serious felony enhancement goes to the offender, not the offense, once it was alleged as to the other counts, McDarment could reasonably assume it would be applied to every eligible count regardless of whether it was or was not specifically alleged as to count 6. We disagree.

Because we strike the prior 2004 conviction for assault, as explained in detail in parts II.A. and II.C., above, McDarment's argument applies only to the remaining prior 2004 conviction for attempted kidnapping.

The original felony complaint filed in this case alleged, inter alia, section 667, subdivision (a)(1) enhancements as to counts 1 through 6. The information filed over a year later on December 14, 2012, alleged, inter alia, section 667, subdivision (a)(1) enhancements as to counts 1 through 5 and 7, but not as to count 6, which is the count at issue here. There were several other changes to the information not relevant here.

Following McDarment's conviction on the substantive offenses, the trial court held a bifurcated proceeding on the prior convictions. At the proceeding, the prosecutor submitted the certified convictions into evidence and stated, "The three prior strike

---

[8]     The five-year enhancement imposed under section 667, subdivision (a)(1), for a prior serious felony conviction is often referred to as a "nickel prior." (See, e.g., *People v. Shaw* (2020) 56 Cal.App.5th 582, 586.)

convictions. I think there's – I don't remember if there was nickels alleged, but they established the three prior strike convictions that are alleged on the Information." Defense counsel did not comment.

The probation report states as to count 6 that "SA 667(a)(1)PC Found True." The probation report recommended imposition of the two 5-year serious felony enhancements as to count 6.

At sentencing, defense counsel submitted on the probation report and did not object to the probation report's use of the priors to recommend additional five-year terms in the manner now challenged. An additional 10 years (5 years times 2) was added to the sentence imposed on count 6 pursuant to section 667, subdivision (a)(1).

" 'Due process requires that an accused be advised of the specific charges against him so he may adequately prepare his defense and not be taken by surprise by evidence offered at trial.' " (*People v. Mancebo* (2002) 27 Cal.4th 735, 750 (*Mancebo*); accord, *People v. Houston* (2012) 54 Cal.4th 1186, 1227 ["A defendant has a due process right to fair notice of the allegations that will be invoked to increase the punishment for his or her crimes"].) Where a statute requires an enhancement or special circumstance be pleaded and proved, imposition of a sentence based on an unpleaded enhancement or circumstance violates the pleading provision of the sentencing statute. (*Mancebo*, at p. 743 [sentencing of the defendant to unpleaded circumstance of gun enhancement violated explicit pleading provisions of one strike law]; *People v. Nguyen* (2017) 18 Cal.App.5th 260, 267 (*Nguyen*) [trial court erred in imposing five-year sentence under § 667, subd. (a), where information alleged prior strike, but not prior serious felony conviction].)

In *Mancebo*, the Supreme Court reversed the imposition of an enhanced sentence based on a multiple victim circumstance that was not alleged in the information. (*Mancebo, supra,* 27 Cal.4th at p. 743.) The court's holding turned on its interpretation of section 667.61, former subdivisions (f) and (i), of the one strike law. (*Mancebo,* at

22.

p. 749.)  Specifically, section 667.61, former subdivision (i), required that " '[f]or the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact,' " and former subdivision (f) provided that " 'circumstances specified in [former] subdivision (d) or (e) which are required for the punishment … [be] pled and proved .…' "[9] (*Mancebo*, at p. 749.)

The information in *Mancebo* alleged the special circumstances that supported a sentence of 25 years to life under section 667.61, former subdivision (e), including use of a firearm, kidnapping, and tying or binding, but not the multiple victim enhancement. (*Mancebo, supra,* 27 Cal.4th at p. 740.)  However, the trial court sentenced the defendant to a prison term of 25 years to life based in part on the multiple victim enhancement, to enable the court to apply the alleged firearm use enhancement to increase the defendant's sentence by an additional 10 years.  (*Ibid.*)

The *Mancebo* court observed, "[N]o factual allegation in the information or pleading in the statutory language informed defendant that if he was convicted of the underlying charged offenses, the court would consider his multiple convictions as a basis for One Strike sentencing .…  Thus, the pleading was inadequate because it failed to put defendant on notice that the People, for the first time at sentencing, would seek to use the multiple victim circumstance to secure indeterminate One Strike terms .…" (*Mancebo, supra,* 27 Cal.4th at p. 745.)  The court concluded the People made a discretionary charging decision not to allege the multiple victim enhancement in the information, explaining:  "There can be little doubt that the prosecution understood the One Strike law's express pleading requirements and knew how to comply with them.  We agree with the Court of Appeal's conclusion that the People's failure to include a multiple-victim-

---

[9]    Former subdivisions (d) and (e) of section 667.61 set forth the circumstances that support imposition of a sentence of 25 years to life for specified crimes.

circumstance allegation must be deemed a discretionary charging decision. Not only is this conclusion supported by the record, but [the People do] not contend, much less suggest, how the failure to plead the multiple victim circumstance was based on mistake or other excusable neglect.… [¶] … Because the People elected to plead the enhancement allegations in this manner [relying on the firearm special circumstance], the express provisions of [the sentencing statute] restricted the trial court to this application." (*Id.* at p. 749, fn. omitted.)

The Court of Appeal in *Nguyen, supra,* 18 Cal.App.5th at pages 262, 264–266, applied the Supreme Court's reasoning in *Mancebo* to facts similar to those at issue here, concluding imposition of a five-year enhancement under section 667, subdivision (a), was an unauthorized sentence where the information alleged the defendant had a prior conviction of a strike under the Three Strikes law, citing to section 667, subdivision (c) and (e)(1), and 1170.12, subdivision (c)(1), as well as a prison prior under section 667.5, subdivision (b), but not a prior serious felony conviction under section 667, subdivision (a). The defendant admitted he had a prior conviction for first degree burglary, the burglary was a serious felony, and he had been sentenced to prison for the offense. (*Nguyen,* at p. 264.) During the admission colloquy and at sentencing, the prosecutor represented the defendant was admitting a " 'nickel prior' " under section 667, subdivision (a), without objection by defense counsel. (*Nguyen,* at pp. 264–265.)

The *Nguyen* court explained that section 1170.1, subdivision (e), similar to the one strike law provision at issue in *Mancebo*, provides, " 'All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact.' " (*Nguyen, supra,* 18 Cal.App.5th at p. 265.) The court observed, "[W]hen, as here, the People allege a prior serious felony conviction, and when they cite the [T]hree [S]trikes law but do *not* cite the prior serious felony conviction statute, we can only conclude that they have made 'a discretionary charging decision.' " (*Id.* at p. 267, fn. omitted.) On this basis, the court modified the judgment to strike the

five-year term under section 667, subdivision (a), and added a one-year term for the prior prison term enhancement, concluding "the trial court erred by imposing the unpleaded five-year prior serious felony conviction enhancement." (*Nguyen,* at pp. 270, 272.)

The People urge us not to follow the reasoning in *Nguyen,* arguing the only requirement is that the factual allegations supporting the enhanced sentence be alleged, in this case that McDarment suffered prior serious felony convictions. We are not persuaded. As the *Nguyen* court observed, the language in the "One Strike" law under section 667.61, former subdivision (i), ("the existence of any fact required [for the special circumstances enhancement] shall be alleged … and either admitted … or found to be true …"), is similar to the language in section 1170.1, subdivision (e) ([a]ll enhancements shall be alleged … and either admitted … or found to be true …"). (*Nguyen, supra,* 18 Cal.App.5th at p. 266.) And section 667.61, subdivision (f), specifically states the "circumstances specified in subdivision (d) or (e) [must be] pled and proved …."

Further, the *Mancebo* court cited approvingly the Court of Appeal opinion in *People v. Haskin* (1992) 4 Cal.App.4th 1434, 1550 (*Haskin*), in which the court concluded the trial court's imposition of a sentence enhancement under section 667, subdivision (a), was unauthorized where the information alleged only a prison prior enhancement under section 667.5, subdivision (b). (*Mancebo, supra,* 27 Cal.4th at pp. 745–746*.*) The *Mancebo* court quoted *Haskin's* holding that " '[b]ecause appellant was neither statutorily nor factually charged with, nor consented to, a substituted section 667 enhancement in conjunction with the 1979 offense, the trial court was without authority to impose a sentence greater than that authorized by section 667.5, subdivision (b), the charging statute which appellant admitted.' " (*Mancebo*, at p. 746, quoting *Haskin*, at p. 1440; see *People v. Jackson* (1985) 37 Cal.3d 826, 835, fn. 12 ["It is obvious … that the enhancement provided by [section 667, subdivision (a),] is subject to equivalent pleading and proof requirements" to those of other enhancements under

25.

section 1170.1, former subdivision (f).], overruled on other grounds in *People v. Guerrero* (1988) 44 Cal.3d 343, 348.)

We do not find, as the People urge, that McDarment has forfeited this argument on appeal. Although the defendant in *Nguyen* did not object to imposition of the five-year sentence enhancement, the court concluded he had not forfeited his objection to the sentence because the violation of section 1170.1, subdivision (e), resulted in an unauthorized sentence. (*Nguyen, supra,* 18 Cal.App.5th at pp. 271–272.) Contrary to the People's contention, McDarment, likewise, did not forfeit his challenge to the sentence by failing to object in the trial court because a defendant does not forfeit a claim of sentencing error where the sentence " 'violates mandatory provisions governing the length of confinement.' " (*Mancebo, supra,* 27 Cal.4th at p. 749, fn. 7 [defendant did not forfeit argument that failure to allege sentence enhancement under One Strike law precluded imposition of enhancement]; accord, *People v. Jimenez* (2019) 35 Cal.App.5th 373, 395 [defendant did not forfeit his challenge to unauthorized sentence where information did not place him on notice of sentence enhancement]; *Nguyen,* at pp. 271–272.)

We rely on *Mancebo* to conclude an enhancement under a statute requiring pleading and proof of the enhancement cannot be imposed unless the enhancement is specifically pleaded. We therefore strike the remaining section 667, subdivision (a) enhancement attached to count 6.

### E. *The Abstract of Judgment Must be Corrected*

Finally, McDarment asks that we order the abstract of judgment be amended, as his actual precustody credit was understated by 24 days and his credits were understated by three days, such that his credits at the time of sentencing should have been for a total of 4,635 days. The People agree.

McDarment was arrested on September 9, 2011, and sentenced on September 21, 2022. Accordingly, he should have received 4,031 days in actual credit, including the

date of sentencing and arrest, and 604 days in credit for a total of 4,635 days of presentence custody credits instead of the 4,608 actually awarded. (*People v. Smith* (1989) 211 Cal.App.3d 523, 526 [sentencing court awards credit for all days in custody up to and including day of sentencing]; § 2933.1 [no more than 15 percent credits if person convicted of offense in 667.5]; § 667.5, subd. (c)(12) [attempted murder].)

Because we remand for resentencing for other reasons discussed, *ante*, precustody credits are to be corrected and a corrected abstract of judgment issued at that time.

## DISPOSITION

The judgment of conviction is affirmed. We vacate the sentence and remand for resentencing as follows: (1) The five-year section 667, subdivision (a)(1) prior serious felony enhancement for the 2004 assault conviction attached to counts 1 and 3 are stricken; (2) both section 667, subdivision (a)(1) prior serious felony enhancements attached to counts 6 are stricken; (3) the true findings on the 2004 prior conviction and 1996 prior juvenile adjudication allegations under section 1170.12, subdivisions (a) through (j) and section 667, subdivision (b) through (i), are reversed and the case is remanded for a retrial on the prior strike allegations if the People so elect, or for a new sentencing hearing if the People do not go forward on those allegations. Following resentencing, a corrected abstract of judgment, including corrected precustody credits, is to be issued.

FRANSON, J.

WE CONCUR:


HILL, P. J.


POOCHIGIAN, J.

27.